MORGAN, LEWIS & BOCKIUS LLP
Brian D. Fahy, Bar No. 266750
brian.fahy@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Sarah Zenewicz, Bar No. 258068
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001
sarah.zenewicz@morganlewis.com

Attorneys for Defendant
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVIER BAHAMONDE, an individual and on behalf of all others similarly situated,

Plaintiff,

vs.

AMAZON.COM SERVICES, LLC, a Washington limited liability company; AMPLIO LOGISTICS, a California corporation; and DOES 1 through 100, inclusive,

Defendants

Case No. 4:24-cv-03333

**AMAZON'S NOTICE OF REMOVAL TO FEDERAL COURT**

[Contra Costa County Superior Court, Case No. C2400903]

[28 U.S.C. §§ 1332, 1441, 1446]

Complaint Filed: April 3, 2024

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, incorrectly named Defendant Amazon.com Services LLC and Amazon Logistics, Inc.[1] ("Amazon"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Contra Costa, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1452, because minimal diversity exists and the amount in controversy exceeds $5 million. Amazon will provide additional evidence to support the allegations of this pleading as required in the event a challenge is raised to the Court's jurisdiction. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND

1. On April 3, 2024, Plaintiff Javier Bahamonde ("Plaintiff"), filed an unverified putative class action complaint against Defendants Amplio Logistics ("Amplio") and Amazon.com Services LLC ("Amazon") in Contra Costa County Superior Court, in the matter entitled *Javier Bahamonde vs. Amazon.com Services,* LLC, Case No. C2400903, a true and correct copy of which is attached as **Exhibit A.**

2. On May 2, 2024, Plaintiff personally served the registered agents for Amazon.com Services LLC. A true and correct copy of the Proof of Service of Summons is attached hereto as **Exhibit B.** All other documents and orders filed in the state court action are attached hereto as **Exhibit C**. Exhibits A-C constitute all of the pleadings, process, and orders served upon Amazon or filed in the Superior Court action.

3. In the Complaint, Plaintiff asserts claims on behalf of the following putative class:

> All current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class.

Complaint ¶ 25.

/ / /

[1] Amazon.com Services LLC is an incorrectly named Defendant, as it was Amazon Logistics, Inc. that contracted with Amplio Logistics.

4. On behalf of himself and the putative class, Plaintiff asserts causes of action for: (1) unpaid overtime; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; (9) violation of labor code § 227.3; and (10) unfair competition.

5. Amazon has calculated the amount in controversy as set forth below. Amazon denies that it employed or jointly employed Plaintiff or any other Amplio employees, that it violated any laws respecting them, or that Plaintiff is entitled to any relief. Amazon reserves the right to provide additional calculations if Plaintiff's theories change.

## II. REMOVAL IS TIMELY

6. Plaintiff served the registered agent for Amazon on May 2, 2024. Because Amazon is filing this Notice of Removal within thirty days of service of the Summons and Complaint, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint).

7. Amazon's 30-day removal deadline is extended to June 3, 2024, as the last day of the period to remove otherwise would have fallen on Saturday, June 1, 2024, and Fed. R. Civ. P. 6 extends the deadline to the following "day that is not a Saturday, Sunday, or legal holiday." *See, e.g.*, *Pogosyan v. U.S. Bank Tr. Nat'l Ass'n*, 2015 WL 12696188, at *2 (C.D. Cal. Oct. 22, 2015) (applying Fed. R. Civ. P. 6 to find that removal was timely because the deadline extended to the following day that was not a Saturday, Sunday, or legal holiday); *Washington v. Reliance Standard Life Ins. Co*., 2020 WL 13561595, at *1 (C.D. Cal. Apr. 16, 2020) (finding removal timely and reasoning that "[b]ecause the last day of the period for the Removal Notice fell on Sunday, February 23, 2020, the Removal Notice was timely filed in this federal court on Monday, February 24, 2020").

8. No party has previously filed a Notice of Removal with this Court for the relief sought herein.

/ / /

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

9. This lawsuit is a putative class action.[2] Removal based on the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and at least one Defendant; (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the Complaint places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453. Although Amazon denies Plaintiff's factual allegations and denies that Plaintiff—or the class he purports to represent—are entitled to the relief requested in the Complaint, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists.

10. To establish CAFA's diversity requirement, a removing party must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co*., 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

#### 1. Plaintiff is a Citizen of California.

11. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Domicile is determined by "an individual's 1) residence in a

---

[2] Amazon denies and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action.

state, and 2) his intent to remain indefinitely." *Boon*, 229 F. Supp. 2d at 1019. Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

12. In his Complaint, Plaintiff alleges that he was employed by Amplio and Amazon, in the State of California. Compl., ¶¶ 3, 4. Also, Plaintiff alleges he is a resident of the State of California. Compl., ¶2. The Complaint does not allege any alternative place of residence or state of citizenship for Plaintiff. *See generally* Compl. Accordingly, Plaintiff was and is domiciled in California and, therefore, is a citizen of California for purposes of removal.

**2. Amazon is not a California Citizen.**

13. Under CAFA, a limited liability company is deemed to be a citizen of the state under whose laws it is organized and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(d)(10); see *also Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010) (holding that a limited liability company qualifies as an "unincorporated association" under Section 1332(d)(10) for purposes of CAFA removal); *Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, *2 (S.D. Cal. Feb 3, 2011) (same). Defendant Amazon.com Services LLC is a limited liability company organized under the laws of Delaware. Its corporate headquarters and principal place of business are in Seattle, Washington, where its officers direct, coordinate, and control its business operations. *Id*. Thus, Defendant Amazon.com Services LLC is a citizen of Delaware and Washington. 28 U.S.C. § 1332(d)(10).

14. Amazon Logistics, Inc., the corporation that entered into a delivery services contract with Amplio, is a citizen of Washington and Delaware for the purposes of diversity jurisdiction. Under 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters— provided that the

headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010). Amazon Logistics, Inc. is incorporated under the laws of Delaware and has its headquarters and principal place of business in Seattle, Washington.

15. Amazon's corporate decisions generally are made in Seattle, Washington, including its operation, executive, administrative, and policymaking decisions. The majority of Amazon's executive officers principally conduct their business from headquarters in Washington.

16. Thus, at all times relevant hereto, Amazon's citizenship, whether Amazon.com Services LLC or Amazon Logistics, Inc., has been Delaware and Washington, and not California.

17. Therefore, based on the Complaint, at least one member of the putative class is a citizen of a state different than one Defendant. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**B. The Putative Class Has More Than 100 Members.**

18. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiff seeks to represent a class comprised of: "All current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." Compl., ¶ 25.

19. Based on available data, Amazon is informed and believes that Amplio has employed at least 447 individuals who worked as hourly, non-exempt employees in California since April 3, 2020 (the start of the alleged class period) through the present. Thus, the putative class contains more than 100 members.

/ / /

/ / /

/ / /

**C. The Amount in Controversy Exceeds $5,000,000.**[3]

20. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

21. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an 'inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy' for purposes of CAFA removal).

22. The ultimate inquiry is what amount the complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted) (explaining that courts are directed "to first look to the

---

[3] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Amazon refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Amazon maintains that each of Plaintiff's claims lack merit and that Amazon is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Amazon's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Amazon denies that this case is suitable for class treatment.

complaint in determining the amount in controversy"); *see also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint-much of which it presumably disagrees with-to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved."). The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy.").

23. The allegations in the removing defendant's notice of removal "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc*., 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (*quoting Arias*, 936 F.3d at 925 (9th Cir. 2019)). Moreover, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42. As the United States Supreme Court has advised, "no antiremoval presumption attends cases invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87.

24. In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc*., 471 F. App'x. 646, 648 (9th Cir. March 8, 2012) (*citing Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993,

1001 (C.D. Cal. 2002)). When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or damages sought").

25. While Amazon denies Plaintiff's factual allegations and denies that he or the putative class he seeks to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that, when the potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within the Complaint put more than $5 million into controversy when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

**1. Plaintiff's First Cause of Action for Unpaid Overtime Puts At Least $739,302.33 in Controversy.**

26. Plaintiff alleges that he and putative class members "at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay to the detriment of Plaintiff and Class Members." Compl., ¶ 39. Plaintiff also alleges, "by requiring Plaintiff and Class Members to, at times, work greater than eight (8) hours per workday, forty (40) hours per workweek, and/or seven (7) straight workdays without properly compensating overtime wages at the proper overtime rate of pay, Defendants, on occasion, willfully violated the provisions of the Labor Code, among others, sections 510, 1194, and applicable IWC Wage Orders, and California law." Compl., ¶ 40. Plaintiff also alleges that "Plaintiff and Class Members have been deprived of overtime wages in amounts to be determined at trial, and are entitled to recovery, plus interest and penalties thereon, attorneys' fees and costs, pursuant to Labor Code section 1194 and 1199, Code of Civil Procedure section 1021.5 and 1032,

and Civil Code section 3287." Compl. ¶41.

27. Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

28. Plaintiff also alleges that the unpaid overtime constitutes unfair competition within the meaning of the UCL. *See* Compl., ¶ 99, 100) and therefore applicable statute of limitations for the unpaid overtime claim is four years. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

29. Based on records available to Amazon, Amazon is informed and believes that the putative class members have worked at least 11,670 workweeks during the four-year statute of limitations, and that and that their average pay rate is $21.12. Amazon's conservative calculation of the amount in controversy for unpaid overtime is **$739,411.20** (11,670 workweeks x $21.12 per hour x 1.5 overtime rate), which is based on the conservative assumption of two hours of unpaid overtime per week at an overtime rate of at least $31.68 per hour ($21.12 x 1.5).

**2. Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal And Rest Periods Put At Least $985,881.60 in Controversy.**

30. Plaintiff alleges, "For at least four (4) years prior to the filing of this Action and continuing to the present, Defendants have, at times, failed to provide Plaintiff and Class Members, or some of them, full, timely thirty (30) minute uninterrupted meal period for days on which they worked more than five (5) hours in a work day and a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day, and failing to provide compensation for such unprovided meal periods as required by California wage and hour laws[,]"( Compl.,¶ 16) and "[f]or at least four (4) years prior to the

filing of this action and continuing to the present, Defendants have, at times, failed to authorize and permit Plaintiff and Class Members, or some of them, to take rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof and failed to provide compensation for such unprovided rest periods as required by California wage and hour laws." Compl., ¶ 17. Plaintiff further alleges that he and the putative class members did not receive one additional hour of pay at the regular rate of pay when they missed meal and rest periods. Compl., ¶¶ 51, 58.

31. Labor Code § 226.7(b) states that if an employer fails to provide an employee a meal or rest period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal or rest period is not provided.

32. Plaintiff also alleges that the failure to pay meal and rest break premiums constitutes unfair competition within the meaning of the UCL (Compl., ¶ 99, 100) and therefore the applicable statute of limitations for the meal and rest break claims is four years. Bus. & Prof. Code § 17208.

33. Based on records available to Amazon, Amazon is informed and believes that the putative class members have worked at least 11,670 workweeks during the four-year statute of limitations and that their average pay rate is $21.12. Amazon's conservative calculation of the amount in controversy for missed meal periods is $492,940.80 and missed rest periods is $492,940.80, assuming two unpaid meal breaks per workweek ($21.12 average wage rate x 2 meal period penalties per week x 11,670 workweeks) and two unpaid rest breaks per workweek ($21.12 average wage rate x 2 rest period penalties per week x 11,670 workweeks).

**3. Plaintiff's Fifth Cause of Action for Waiting Time Penalties Puts At Least $1,834,905.60 in Controversy.**

34. In support of his cause of action for waiting time penalties, Plaintiff alleges, "Plaintiff is informed and believes, and based thereon alleges, that in the three (3) years before the filing of the Complaint in this Action through the present, Defendants, due to the failure, at times, to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." Compl., ¶ 66. He also alleges, "Plaintiff is informed and believes

Defendants' failure, at times, to pay Plaintiff and Class Members all wages earned prior to termination or resignation in accordance with Labor Code sections 201 and 202 was willful. Defendants had the ability to pay all wages earned by Plaintiff and Class Members at the time of termination in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, at times, to pay all wages earned prior to termination or resignation." Compl., ¶ 67. As a result, Plaintiff alleges that "Pursuant to Labor Code section 203, Plaintiff and Class Members are entitled to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days." Compl., ¶ 68.

35. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca,* 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

36. Based on data available to Amazon, on information and belief, there are at least 362 putative class members whose employment has terminated in the three years before the filing of the Complaint and the average hours worked per day is more than 8 hours per day. Amazon's conservative calculation of the amount in controversy for waiting time penalties is **$ 1,834,905.60** (362 terminated class members x $21.12 hourly rate x 8 hours per day x 30 days).

**4. Plaintiff's Sixth Cause of Action for Failure to Furnish Accurate Itemized Wage Statements Puts At Least $460,550.00 in Controversy.**

37. Plaintiff alleges that Defendants "failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly

rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; among other things." Compl.,¶ 74. Plaintiff further alleges that "Defendants' failure to, at times, provide Plaintiff and Class Members with accurate wage statements was knowing, intentional, and willful." Compl., ¶ 75.

38. Plaintiff seeks to recover "$50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate $4,000.00 per employee." Compl., ¶ 77.

39. Based on Plaintiff's allegations regarding the frequency of unpaid work time and meal/rest period violations, Amazon may reasonably assume that the Complaint alleges a 100% violation rate for wage statement claims when calculating the amount placed in controversy. Indeed, courts have found an assumed 100% violation rate for wage statement claims reasonable based on similar allegations. *See, e.g., Parsittie v. Schneider Logistics, Inc.*, 2019 WL 6792807, at *6 (C.D. Cal. Aug. 13, 2019) (concluding that "it is reasonable to assume a 100% violation rate" for the plaintiff's wage statement claim based on the allegation that "at all relevant times during the applicable limitations period, [the defendants] had a polic[y] and practice[ ] of failing to pay non-exempt employees for all hours worked."); *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) ("The allegations here directly support Defendants' use of a 100% violation rate, given that Plaintiff alleges that all employees received defective statements."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018) (holding 100% violation rate reasonable where plaintiff alleged in her complaint "that at all relevant times" the defendants maintained a "policy and practice of issuing [inaccurate] wage statements"); *Mejia*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the class period could potentially have been noncompliant. In addition, and aside from the various allegations, if Defendant had a uniform policy of failing to provide rest periods, as discussed above, the wage statements that Defendant provided would necessarily have been inaccurate

100% of the time because each wage statement would have failed to include compensation for the missed rest break.").

40. Amazon is informed and believes that, during the relevant one-year statute of limitations period, Amplio provided wage statements to putative class members on a biweekly basis. During the period of April 3, 2023, to the present, Amplio issued approximately 4,711 wage statements to putative class members. Thus, Plaintiff's cause of action for failure to provide accurate wage statements puts **$460,550.00** in controversy [(211 employees during the applicable limitations period x $50 penalty for initial pay period = $10,550) + (4500 subsequent pay periods x $100 penalty = $450,000), equaling total claimed penalties of $460,550.00].

**5. Plaintiff's Eighth Cause of Action for Failure to Reimburse Expenses Puts At Least $72,937.50 in Controversy.**

41. Plaintiff's Eighth Cause of Action is based on his allegation that "Defendants required Plaintiff and Class Members, or some of them, to incur, at times, necessary expenditures or losses in direct consequence of the discharge of their duties or at the obedience to the directions of Defendants . . . During that time period, Plaintiff is informed and believes, and based thereon alleges that Defendants failed and refused, and still fail and refuse, at times, to reimburse Plaintiff sand Class Members for those losses and/or expenditures." Compl.,¶¶ 89, 90. Plaintiff also alleges Defendants' failure to reimburse business expenses constitutes unfair competition within the meaning of the UCL (Compl., ¶¶99, 100 ), and therefore the applicable statute of limitations for Plaintiff's expense reimbursement claim is four years. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."); *Cortez,* 23 Cal. at 178-179 (noting the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

42. Based on records available to Amazon, Amazon is informed and believes that during the four years preceding the filing of the Complaint, the putative class members have worked at least 2,917.5 work months during the four-year statute of limitations. Amazon's conservative calculation of the amount in controversy for unpaid expense reimbursements is

therefore **$72,937.50** [2,917.5 months worked x $25), which is based on the reasonable assumption of a $25 per month reimbursement amount. *See Anderson v. Starbucks Corp*., 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020) (accepting assumption of $32.50 was a "reasonable basis for estimating" the amount in controversy on a cell phone reimbursement claim, and conservatively represents a recovery that would be "less than a full recovery of the monthly plan fee."); *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding only one violation necessary to impose assumption of $25 monthly fee); *Castro v. ABM Indus., Inc.*, 2017 WL 4682816, at *4-5 (N.D. Cal. Oct. 19, 2017) (allegations of "regularly", "common" practices, support assumption that plaintiffs incurred at least one reimbursable cell phone expense for each month worked using cost of $27.14/month.).

43. Before considering Plaintiff's claim for attorneys' fees, which are also included in the alleged amount in controversy as set forth below, Plaintiff's underlying claims have placed the following amounts in controversy:

| Claim | Amount in controversy |
|---|---|
| Unpaid Overtime | $739,302.33 |
| Failure to Provide Meal Breaks | $492,940.80 |
| Failure to Provide Rest Periods | $492,940.80 |
| Waiting Time Penalties | $1,834,905.60 |
| Failure to Furnish Accurate Itemized Wage Statements | $460,550.00 |
| Failure to Reimburse Business Expenses | $72,937.50 |
| **Total:** | **$4,093,577.03** |

**6. Plaintiff's Request for Attorneys' Fees Place Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.**

44. Plaintiff seeks recovery of attorneys' fees. *See* Compl., ¶¶ 23, 30, 41, 46, 54, 62, 78, 92, 98; Prayer for Relief, ¶M. Attorneys' fees are properly included in determining the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir.

2007); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

45. Amazon denies Plaintiff's claim for attorneys' fees. However, for purposes of removal, the Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Fritsch*, 899 F.3d at 795 and 796, fn. 6. Courts have used the 25% benchmark to calculate potential fees for purposes of the CAFA amount in controversy. *See, e.g.*, *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *8 (C.D. Cal. Jan. 6, 2016); *Oda*, 2015 WL 93335, at *5-6. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes.").

46. Therefore, the inclusion of attorneys' fees would add at least another **$1,023,394.26** to the amount in controversy (25% of $4,093,577.03) bringing the total amount in controversy to at least **$5,116,971.29.**

47. Even if the 25% benchmark is not used, it is reasonable to assume that Plaintiff's potential attorneys' fees place at least an additional **$1,000,000** in controversy. Plaintiff's counsel has previously presented to courts in fee motions in class actions that they have hourly rates between $250 and $1,000. *See*, *e.g.*, *Miguel Angel Lopez vs. Innovative Coatings Technology Corporation*, Orange County Superior Court, Case No. 30-2020-01173245 (Cal. Super. Oct. 27, 2023) (noting Plaintiff's counsel David Bibiyan presented an hourly rate of $1,000.00 in declaration in support of Motion for Final Approval of Settlement); *Noe v. My Pillow Inc.*, San Bernardino Superior Court Case No. CIVDS2011360, 2022 WL 1157133 (Cal. Super. Feb. 22, 2022) (Motion for Final Approval of Class Action) (claiming rates between $250 and $700); see

also *G De Leon et al., v. Wismettac Asian Foods, Inc.*, Los Angeles Superior Court Case No. 19STCV18172, 2020 WL 12617949 (Cal. Super. July 20, 2022) (Motion for Final Approval of Class Action) ("Class Counsel's hourly rates for attorneys are $750, $550 and $400.").

48. Based on just a $600 per hour rate, it would only take 2,000 billable hours to reach at least $1,000,000 in attorneys' fees in this action. Litigating a wage and hour class action through discovery, class certification, dispositive motions, and trial would easily exceed 2,000 hours. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour). As such, Amazon's assumption that there are at least $1,000,000 in attorneys' fees place in controversy by this wage and hour class action is reasonable.

49. Thus, if the 25% benchmark method is not used, the total amount placed in controversy by Plaintiff's Complaint is at least **$5,093,577.03** ($4,093,577.03 as shown above + $1,000,000 in attorneys' fees).

**D. <u>CAFA's Local Controversy Exception to Removal Does Not Apply.</u>**

50. The "local controversy" exception to CAFA jurisdiction also does not apply because during the three-year period prior to the filing of this action, more than one "class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." *See* 28 U.S.C. § 1332(d)(4)(A); *see also Chalian v. CVS Pharmacy, Inc.*, No. CV1608979ABAGRX, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11, 2017) (holding that the local controversy exception did not apply where similar class action lawsuits had been filed against defendants in the past three years).

/ / /

51. Courts have interpreted the language of 28 U.S.C. § 1332(d)(4)(A))(ii) broadly in order to narrowly apply the exception. *See*, *e.g.*, *Laddi v. Soraya Motor Co.*, 2017 WL 7053651, No. C17-0287-JCC, at *3 (W.D. Wash., May 5, 2017) (explaining that the definition of "same or similar" class action should "be interpreted liberally" and that two prior class actions filed in California disqualified the local controversy exception); *Jadeja v. Redflex Traffic Sys, Inc.*, 2010 WL 4916413, at *2–3 (N.D. Cal., Nov. 22, 2010) (Plaintiff's contention that the prior class action filed outside California was dissimilar failed because "the plain language of the statute" focused on whether the factual allegations against the defendant were similar.).

52. During the three-year period prior to the filing of this action, more than one similar wage and hour class action lawsuit has been filed against Amazon, negating application of the home state exception.[4] *Martinez v. Darden Rests., Inc.*, 2015 WL 4480658, at *2 (C.D. Cal. July 22, 2015).

## IV. VENUE

53. This action was originally filed in the California Superior Court for the County of Contra Costa. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V. NOTICE

54. Amazon will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

55. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Amazon as well as other documents filed in the state court action are filed concurrently with this Notice of Removal as exhibits hereto.

/ / /

[4] *See*, *e.g.*, *Xola v. Full Package Delivery, LLC, Amazon Logistics, Inc.*, San Diego County Superior Court Case No. 37-2022-00006720-CU-OE-CTL (filed February 22, 2022); *Ortega v. Stelvio Transport, LLC, Amazon Logistics, Inc.*, San Bernardino County Superior Court Case No. CIV SB 2207825 (filed April 15, 2022); *Webb v. Rejoice Delivers LLC et al.*, Santa Clara County Superior Court Case No. 22CV401850 (filed August 9, 2022); *Prater v. On Courier 365 et al.*, San Mateo County Superior Court Case No. 20-CIV-02814 (filed August 23, 2022).

**VI. CONCLUSION**

56. Based on the foregoing, Amazon requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Amazon respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: June 3, 2024

MORGAN, LEWIS & BOCKIUS LLP

By *[/s/ Brian D. Fahy]*
Brian D. Fahy
Sarah Zenewicz
Eva M. Nofri

Attorneys for Defendant
AMAZON.COM SERVICES LLC